COMMONWEALTH v. O'HARRAH.

Court of Appeals of Kentucky.

Nov. 13, 1953.

J. D. Buckman, Atty. Gen., Wm. F. Simpson, Asst. Atty. Gen., for appellant.

Daniel W. Davies, Newport, for appellee.

STANLEY, Commissioner.

The Commonwealth asks a certification of the law with respect to the validity of an indictment to which a demurrer was sustained. In responding, we run into a grave constitutional question involving the personal privileges and immunities of the citizen. Near the close of the spring term, the submission of this case was set aside and an order entered requesting briefs on the question and related points. The Attorney General has filed an able brief, but Mr. Daniel W. Davies, who represented the appellee as defendant below, has made no response whatever. This we must regard as a breach of professional duty.

The indictment accused Roscoe C. O'Harrah of the crime of "Failing to comply with the orders of the court relative to the maintenance and support of his child as set forth in the judgment granting the divorce to the parents of the child." The description of the offense is, in summary, that the accused had failed to comply with an order of the Campbell Circuit Court entered in a divorce case, directing O'Harrah, the father of a nine year old child, to pay the sum of $15 a week for his support and maintenance. The judgment had been entered July 30, 1952, and the indictment was returned two and one-half months later. The demurrer was sustained because the indictment did not state the child was in indigent or destitute circumstances at the time the father failed to pay the judgment, the court being of opinion that such condition "is a necessary ingredient of the offense charged." The statute, KRS 435.240(3), contains no such condition or qualification and the indictment followed the statute.

The statute, an act of 1950, chapter 181, is an amendment of a statute condemning the desertion of a child under sixteen years of age, leaving him in destitute or indigent circumstances and without making proper provision for his care. A similar act, passed in 1946, was invalid because constitutional procedure was not observed in its enactment. Commonwealth v. Scott, 310 Ky. 537, 221 S.W.2d 64. We quote the present statute, KRS 435.240(3), omitting paragraph (c), which integrates the provision of the original statute with respect to probation.

"(a) If a divorce has been granted by a court of competent jurisdiction, and thereafter the parent of any child under the age of sixteen years shall fail to comply with the orders of the court relative to the maintenance or support of the child as set forth in the judgment granting the divorce, or if the parent having the custody of such child under the orders of the court shall abandon or desert the child, or if a parent not having the custody of the child shall take and carry away the child from the custody of the parent or other person to whom the custody of the child was awarded by the judgment of divorce, or by a subsequent order of the court amending the judgment, without the consent of the parent or other person having custody, the parent so doing shall be deemed guilty of a felony and upon conviction shall be confined in the penitentiary for not less than one nor more than five years.

"(b) The circuit court in which the divorce was granted, the circuit court of the county where the custodian of the child resided at the time the offense set out in this subsection was committed, and the circuit court of the county where the child was when the offense was committed, shall each have jurisdiction of the prosecution under this subsection."

 We do not doubt that a statute punishing nonsupport of children is within legitimate legislation although it may omit

the element of evil motive or criminal intent, for always guilty intent may be presumed from neglect of a known moral duty. The law of nature as well as the law of man imposes upon the father, who has brought life into the world, the imperative duty to maintain and support his child. Neither the public nor the child's other relatives has such duty where the father can do so. The parent able to support his child may not absolve himself by relying on the generosity of others. Ragsdale v. Commonwealth, 195 Ky. 750, 243 S.W. 1056. Upon this are based penal statutes which afford, as said in State v. Yocum, 182 Ind. 478, 106 N.E. 705, "a sharper and more effective spear for a dull or dormant sense of parental duty than that which was before the instrument of a court of equity in a divorce proceeding." See also State v. Waller, 90 Kan. 829, 136 P. 215, 49 L.R.A., N.S., 588; State v. Langford, 90 Or. 251, 176 P. 197; State v. Gillmore, 88 Kan. 835, 843, 129 P. 1123, 1126, 47 L.R.A.,N.S., 217, 226.

A father who can but will not take care of his child ought not be coddled by the law. But oppression ought not be practiced in the name of law and justice. Some observations may be made as to the severity of this statute.

The accused delinquent parent may have been ever so willing and anxious to perform his natural duty and to comply with the terms of the civil judgment but was wholly unable to do so. Though he be a bedridden pauper and his child or its mother in affluent circumstances or have abundant means of support, the defendant is afforded no mitigation and is allowed no defense except that he has in fact paid, as here, the two monthly sums of $15 each. Providing ample support otherwise than by money is no defense. Our child desertion statute, KRS 435.240(1) is intended to punish a parent only for an intentional and absolute refusal to discharge his natural duties, so this court has held a father who had done the best he could but because of poverty and incapacity had failed to support his children properly should not be punished under the statute. Brock v. Commonwealth, 206 Ky. 621, 268 S.W. 315. Willfully or unreasonably to neglect to support a minor child, when not accompanied by desertion, is a misdemeanor. KRS 405.030, 405.990. But this Act makes a felony the mere nonpayment of a judgment for money. As said in Commonwealth v. Barney, 115 Ky. 475, 74 S.W. 181, 182: "While in civil actions the quo animo with which a thing is done may sometimes be immaterial, we apprehend that generally in legal, as always in moral, contemplation, crime proceeds alone from a wicked mind." Moreover, if O'Harrah, the accused in this case had been convicted and sent to prison for failing to pay the two months arrearage, he would have been subject to indictment and conviction from time to time and imprisonment indefinitely, for each delinquency is made a separate offense. The cruelty of a debtor's prison comes to mind.

We recognize the legislative power to define what acts or omissions shall constitute criminal offenses so long as the exercise of the power does not infringe constitutional rights and privileges, express or necessarily implied. Taylor v. Commonwealth ex rel. Dummit, 305 Ky. 75, 202 S. W.2d 992. But there is no power to declare to be a crime an act which has no relation to the comfort, welfare and safety of society or an act which could not be avoided by the utmost care and circumspection, or which, in its nature, is and must be under all circumstances innocent, or the nonperformance of which is impossible. 14 Am. Jur., Criminal Law, §§ 16, 22; 22 C.J.S., Criminal Law, §§ 13, 30. And it is debatable as to what extent or under what circumstances the essential common law element of evil intention or guilty knowledge may be eliminated in statutory offenses that are not merely malum prohibition. 14 Am. Jur., Criminal Law, §§ 23, 24. See, for example, Commonwealth v. Barney, supra, 115 Ky. 475, 74 S.W. 181, where it was found necessary either to read into a statute an evil intention or to declare the act unconstitutional, and Burnam v. Commonwealth, 228 Ky. 410, 15 S.W.2d 256, holding unconstitutional an act which made it a

crime merely to issue a "cold check" without a fraudulent purpose.

■ The usual manner of enforcement of a judgment for maintenance of a child is by rule for contempt, a summary proceeding before the judge. In this, however, the defendant has the privilege of purging his contempt if he can by showing a reasonable and lawful excuse, and the court has discretion within limits in doing justice in the case. Since the power of the court to punish for contempt without a jury "is as ancient as the proceedings in court of justice" the action is everywhere regarded as not violating constitutional rights. Bishop, Criminal Law (8th Ed.), Sec. 269; Arnold v. Commonwealth, 80 Ky. 300, 44 Am.R. 480; Roper v. Roper, 242 Ky. 658, 47 S.W.2d 517; Adams v. Adams, 80 N.J.Eq. 175, 83 A. 190, Ann.Cas.1918E, 1083. We realize that there are aggravating instances where a rule for contempt is ineffectual. But that does not justify making the equivalent of contempt a felony without the right of defense. Recognizing the desirability for some remedial legislation, the question to be answered is whether the expedient adopted has overleaped the bounds of legislative power.

■ In considering the statute, the overriding fact is the underlying denial of due process and of the rights, privileges and immunities of the Bill of Rights. 14th Amendment U. S. Constitution; Sections 7 and 11, Kentucky Constitution. The trial of the accused under the present statute is secondary and subordinate. The civil trial was primary and predominant. Often the judgment is entered by agreement or goes by default without the father's actual knowledge. See Cornett v. Commonwealth, Ky., 251 S.W.2d 466. In making the mere disobedience of the court's order in such civil action a felony, the Legislature has indirectly denied the accused person the right of trial by jury, the right to be heard by himself and counsel, the right to meet the witnesses face to face, the right to have compulsory process for obtaining witnesses in his favor and the right of immunity from giving evidence against himself. Moreover,

he has not had the benefit of the rule of reasonable doubt. Perhaps the nature of the judgment keeps the Act technically from providing imprisonment for debt, State v. Francis, 126 Or. 253, 269 P. 878, but it smacks of it. See Sec. 18, Ky. Constitution; cf. Burnam v. Commonwealth, 228 Ky. 410, 15 S.W.2d 256, supra. It seems hardly necessary to say that the General Assembly cannot do by indirection what it cannot do directly because of constitutional restrictions. 11 Am.Jur., Constitutional Law, § 95. As expressed in Fairbank v. United States, 181 U.S. 283, 294, 300, 21 S.Ct. 648, 655, 45 L.Ed. 862, 867, 869, "Constitutional provisions, whether operating by way of grant or limitation, are to be enforced according to their letter and spirit, and cannot be evaded by any legislation which, though not in terms trespassing on the letter, yet in substance and effect destroy the grant or limitation."

■ In appraising the validity of the statute we must look through the form of the statute to the substance of what it does. The courts may not countenance an evasion or even an unintentional avoidance of our fundamental law.

■ As stated by Mr. Justice Bradley in the leading case of Boyd v. U. S., 116 U.S. 616, 6 S.Ct. 524, 535, 29 L.Ed. 746, 752.

"Illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. * * * It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis*."

■ It is well said in Toney v. State, 141 Ala. 120, 37 So. 332, 334, 67 L.R.A. 286, 107 Am.St.R. 23: "If the conditions prescribed by this act can be validly im-

390

posed, the door is open for the imposition of others more onerous." This is supported by the master of our craft, Chief Justice Marshall, who wrote in Brown v. State of Maryland, 12 Wheat 419, 6 L.Ed. 678: "Questions of power do not depend on the degree to which it may be exercised."

We are of opinion, therefore, that subsection (3) of the statute, KRS 435.240(3), is unconstitutional. For that reason, the indictment was demurrable. The statute before amendment is in force. Ward v. Commonwealth, 228 Ky. 468, 15 S.W.2d 276.

The law is so certified.